### THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **MICHAEL MEADOWS, on behalf of himself,** | ) | |
| **individually, and on behalf of all others similarly** | ) | |
| **situated,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Case No. 1:16-cv-06221** |
| | ) | |
| **v.** | ) | **Hon. Manish S. Shah** |
| | ) | |
| **NCR CORPORATION,** | ) | |
| | ) | |
| **Defendant.** | ) | |

### PLAINTIFFS' RENEWED MOTION AND MEMORANDUM IN SUPPORT OF CONDITIONAL CERTIFICATION AS COLLECTIVE ACTION AND ISSUANCE OF NOTICE PURSUANT TO 29 U.S.C. § 216(b)

Ryan F. Stephan
Haley R. Jenkins
**STEPHAN ZOURAS, LLP**
205 N. Michigan Avenue
Suite 2560
Chicago, Illinois 60601
312.233.1550
312.233.1560 *f*
rstephan@stephanzouras.com
hjenkins@stephanzouras.com

**ATTORNEYS FOR PLAINTIFFS**

## <u>TABLE OF CONTENTS</u>

**Page**

Table of Authorities ...................................................................................................... ii

I.     INTRODUCTION .........................................................................................1

II.    PROCEDURAL BACKGROUND...................................................................3

III.   FACTUAL BACKGROUND .........................................................................3

IV.   ARGUMENT ...............................................................................................7

      A.     Allowing Plaintiffs to Pursue Their Claims Collectively by Facilitating Notice to Potential Class Members Furthers the Remedial Purpose of the FLSA .................7

      B.     The First Step in Certification Requires Only a Showing that Potential Opt-in Plaintiffs May Be "Similarly Situated"...................................................................9

      C.     The Evidentiary Burden for Conditional Certification and Notice Is Modest.......10

      D.     Plaintiffs Have Satisfied Their Burden to Support Notice to the Class ................12

      E.     NCR Should Be Directed to Produce a List of Potential Class Members to Facilitate Notice ..................................................................................................15

      F.     Plaintiffs' Proposed Notice Is Fair and Adequate................................................15

V.     CONCLUSION............................................................................................16

## <u>TABLE OF AUTHORITIES</u>

**Page**

**CASES**

*Allen v. Marshall Field & Co.*, 93 F.R.D. 438 (N.D. Ill. 1982)..................................................... 7

*Anyere v. Wells Fargo*, No. 09 C 2769, 2010 WL 1542180 (N.D. Ill. Apr. 12, 2010)................ 16

*Blakes v. Illinois Bell Telephone Co.*, No. 11 CV 336, 2011 WL 2446598 (N.D. Ill. June 15 2011)................................................................................................................................. 14

*Boltinghouse v. Abbott Labs., Inc.*, No. 15 CV 6223, 2016 WL 3940096 (N.D. Ill. July 20, 2016) .............................................................................................................................. 11, 13, 16

*Brand v. Comcast Corp.*, No. 12 CV 1122, 2012 WL 4482124 (N.D. Ill. Sept. 26, 2012).......... 14

*Brown v. Club Assist Road Service U.S., Inc.*, No. 12 CV 5710, 2013 WL 5304100 (N.D. Ill. Sept. 19, 2013) ......................................................................................................... 9

*Butler v. DirectSAT USA, LLC*, 876 F. Supp. 2d 560, 569 (D. Md. 2012).................................. 14

*Cramer v. Bank of America, N.A*, No. 12 C 8681, 2013 WL 6507866 (N.D. Ill. Dec. 12, 2013) 11

*Ervin v. OS Restaurant Services, Inc.*, 632 F.3d 971 (7th Cir. 2011)........................................... 7

*Espenscheid v. DirectSat USA, LLC*, No. 09-cv625-bbc, 2010 WL 2330309 (W.D. Wisc. June 7, 2010)................................................................................................................................. 14

*Essame v. SSC Laurel Operating Co. LLC*, 847 F. Supp. 2d 821 (D. Md. 2012) ....................... 14

*Flores v. Lifeway Foods, Inc.*, 289 F. Supp. 2d 1042 (N.D. Ill. 2003) ........................................ 10

*Girolamo v. Cmty. Physical Therapy & Assocs.*, No. 15 C 2361, 2016 WL 3693426 (N.D. Ill. July 12, 2016) ............................................................................................................... passim

*Harkins v. Riverboat Services, Inc.*, No. 99 C 123, 2002 WL 32406581 (N.D. Ill. May 17, 2002) ..................................................................................................................................... 7, 9

*Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165 (1989)....................................................... 8, 16

*Howard v. Securitas Sec. Servs. USA, Inc.*, No. 08 C 2746, 2009 WL 140126 (N.D. Ill. Jan. 20, 2009).................................................................................................................................. 10

*Jirak v. Abbott Labs., Inc.*, 566 F. Supp. 2d 845 (N.D. Ill. 2008) ........................................... 8, 12

*Larsen v. Clearchoice Mobility*, No. 11 C 1701, 2011 WL 3047484 (N.D. Ill. July 25, 2011) .... 9, 11, 12

*Lukas v. Advocate Health Care Network and Subsidiaries*, 2014 WL 4783028 (N.D. Ill. Sept. 24, 2014).................................................................................................................................. 13

*Madden v. Corinthian Colleges, Inc.*, No. 08 C 6623, 2009 WL 4757269 (N.D. Ill. Dec. 8, 2009) ......................................................................................................................................... 13

*Mielke v. Laidlaw Transit, Inc.*, 313 F. Supp. 2d 759 (N.D. Ill. 2004)........................................ 10

*Molina v. First Line Solutions LLC*, 566 F. Supp. 2d 770 (N.D. Ill. 2007)..................... 11, 12, 13

*Sexton v. Franklin First Fin., Ltd.*, No. 08-CV-04950(JFB)(ARL), 2009 WL 1706535 (E.D.N.Y. June 16, 2009) ......................................................................................................................... 11

*Strait v. Belcan Eng'g Grp., Inc.*, 911 F. Supp. 2d 709 (N.D. Ill. 2012) ..................................... 11

*Sylvester v. Wintrust Financial Corp.*, No. 12 C 01899, 2013 WL 5433593 (N.D. Ill. Sept. 30, 2013)......................................................................................................................................... 10

*Terry v. TMX Furniture*, No. 13 C 6156, 2014 WL 2066713 (N.D. Ill. May 19, 2014) ........... 7, 9

*Vaughan v. Mortgage Source*, No. CV 08-4737(LDW)(AKT), 2010 WL 1528521 (E.D.N.Y. Apr. 14, 2010) ......................................................................................................................... 8

*Woods v. New York Life Ins. Corp.*, 686 F.2d 578, 580 (7th Cir. 1982)........................................ 8

**STATUTES**

Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.* ............................................................ passim

**REGULATIONS**

29 C.F.R. § 785.13 ...................................................................................................................... 14

Named Plaintiff Michael Meadows and 299 additional Opt-in Plaintiffs from 37 states (collectively, "Plaintiffs") bring this renewed motion requesting the Court authorize notice to other Customer Engineers ("CEs") who worked for Defendant NCR Corporation ("Defendant" or "NCR") in the past three years informing them of this case and their rights to participate. In support thereof, and to cure any doubt, Plaintiffs provide sworn declarations from 30 CEs from 14 states and ask the Court to pay particularly close attention to NCR's own Handbook requiring CEs to begin work "at least thirty (30) minutes ***before the start*** of their shift." Ex. A, NCR U.S. Customer Engineer Human Resources Handbook March 2013 at NCR MEADOWS0000316; Ex. B, NCR U.S. Customer Engineer Human Resources Handbook July 2016 at NCR MEADOWS0000373 (emphasis added). NCR's own stated policy, directives from it's own Territory Managers ("TMs"), and Plaintiffs' sworn declarations that they complied with NCR's policies and directives provide undisputable proof of a common nexus the Court previously found to be lacking.[1]

## I.  **INTRODUCTION**

This case involves one overarching common question – did Plaintiff and other CEs work before and after their shifts without pay and in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.*? The answer, as confirmed by Defendant's own policies, Plaintiffs' sworn declarations, and other evidence is ***YES***.   Per Defendant's stated policies,

---

[1] It also bears noting that at least three other courts and one arbitrator have certified both opt-in and opt-out classes of CEs in wage cases against NCR. Importantly, like this case, the primary nexus binding Plaintiffs' claims was NCR's policy requiring CEs to perform work at least 30 minutes before the start of their shifts. For example, in *Price v. NCR*, the arbitrator held, based in part on claimants' declarations, that "all CEs were subject to [NCR's] nation-wide pre- and post-paid work day practices." Ex. C, *Price v. NCR Corporation* Order of Arbitrator Conditionally Certifying Class and Facilitating Notice of Class Action, at 11. "These practices, if actually followed and reinforced by [NCR's] knowing endorsement, would likely be in violation of the FLSA and would be such despite the disclaimers in the Handbook cited by [NCR] or [NCR's] current FLSA Policy pronouncements." *Id*. at 11-12, *citing Gaines v. K-Five Constr. Corp.*, 742 F.3d 256 (7th Cir. 2014). *See also Wilkinson, et al. v. NCR Corporation, et al.*, No. 08 CV 5578 (N.D. Ill.) (court certified a Rule 23 class of CEs for settlement).

Plaintiffs all began work in the same common way: by checking in with Defendant and/or its Operations Center via phone or mobile device and "at least thirty (30) minutes *before the start* of [their] shift[.]" Ex. A at NCR MEADOWS0000316; Ex. B at NCR MEADOWS000373 (emphasis added). Consistent with this policy, Plaintiffs, who were all home-dispatched, followed the same general sequence at the start of their work day: fielding calls, emails, or text messages with NCR's Operations Center, mapping their routes, entering estimated times of arrival ("ETAs") on NCR's routing application, pre-calling customers, loading their company owned vehicles ("COVs"), updating their status to "dispatch," "DS," or "traveling" on NCR's routing application, and driving to their first jobs of the day. Plaintiffs did this work as instructed – *before the start* of their shifts and without pay. An analyis of Defendants' own data, including when Plaintiffs went "dispatch," "DS," or "traveling" on Defendant's routing program, will confirm this work was done as instructed, pre-shift and without pay. Finally, declarations from 30 CEs confirm actual compliance with NCR's policies and directives to begin work at least 30 minutes before the start of their shifts and perform other common tasks post-shift off the clock and without pay.

Accordingly, Plaintiffs move this Court to conditionally certify a collective action and to issue notice to all similarly situated employees of the pending FLSA claims so that current and former CEs will have the opportunity to join the collective action and exercise their rights under the FLSA. Conditional certification and court-facilitated notice are necessary here because the Plaintiffs and other CEs employed by Defendant are "similarly situated" with respect to NCR's common policy to begin work at least 30 minutes before the start of their shifts, as well as other off-the-clock claims, and meet the lenient standard applied at this stage of the litigation. Because the Named Plaintiff and proposed class members are subject to this same NCR challenged policy

and practice, there is a common nexus binding their claims and conditional certification should be granted.[2]

## II.    PROCEDURAL BACKGROUND

Based on knowledge of previous cases, Defendant's ongoing common violations, the remarkable participation of current and former CEs to join this case, and running statutes of limitations, Plaintiffs initially moved expeditiously for conditional certification. *See* Dkt. No. 59. Admittedly, the original motion lacked sufficient detail for the Court to determine how Defendant's policies affect CEs nationwide. Additionally, NCR deliberately excluded evidence of its written policies mandating off-the-clock work of its CEs in its original response. *See* Ex. A at NCR MEADOWS0000316; Ex. B at NCR MEADOWS0000373. NCR's Handbook requiring CEs to begin work at least 30 minutes *before the start of their shifts* was only disclosed to Plaintiffs after Defendant submitted its opposition.  Plaintiffs now renew their Motion for Conditional Certification as a Collective Action and Issuance of Notice Pursuant to 29 U.S.C. § 216(b) and supplement it with NCR's own policy requiring pre-shift work as well as 30 CE declarations and additional support.

## III.    FACTUAL BACKGROUND

NCR is a provider of computer producs and technical support services, including automated teller machine ("ATM") and point-of-sale ("POS") products and services. Compl. ¶ 8; Answer ¶ 8. Defendant is an employer pursuant to 29 U.S.C. § 203(d). Compl. ¶ 8. Plaintiffs worked for NCR as Customer Engineers ("CEs") for significant periods of time. Ex. D, Dep. Tr. Michael Meadows ("Meadows Dep.") at 27:6-7 (Meadows worked for NCR for approximately

---

[2]  The calculation of Plaintiffs' damages are also bound by a common nexus: Defendants' own data will show CEs logged into NCR's routing database and went "dispatch," "DS," or "traveling" before the start of their shifts and without pay.

the last eight years); *see also* Declaration of Brian Taylor ("Taylor Decl.")[3] ¶ 1 (opt-in plaintiff who has worked for NCR since December 2006); Varner Decl. ¶ 1 (opt-in plaintiff who worked for NCR from 2001 to November 2014); Nyaberi Decl. ¶ 1 (opt-in plaintiff who has worked for NCR since April 2006); *see generally* Group Ex. E; Dkt. Nos. 7-9, 15, 18-35, 38, 44, 46, 49, 51, 53, 54, 55, 58, 61, 63, 65, 67, 69-71, 74, 77-81, 85-87, 90-91, 93-96, 98, 104, 108, 110, 114, 116-117, 120-121, 124-128, 130, 131, 133 (opt-in consent forms for 299 CEs employed by NCR). All Plaintiffs worked in the field visiting NCR customer sites and providing technical support and service of ATMs and POS systems for NCR's customers. *See* Meadows Dep. at 40:7-11; Taylor Decl. ¶ 2; Varner Decl. ¶ 2; Nyaberi Decl. ¶ 2; *see generally* Group Ex. E.

All CEs were paid a similar hourly rate (on average, approximately $27 per hour) and were classified as non-exempt under the FLSA. Ex. F, Dep. Tr. Mariana Hall ("Hall Dep.") at 91:24-92:5. CEs were required to comply with the same NCR rules and policies, including the NCR Handbook, and reported to NCR Territory Managers ("TMs"). *Id.* at 92:6-8, 93:9-11. NCR provided CEs with an NCR email address to communicate with NCR supervisors and other employees. *Id.* at 95:2-11. All CEs were given an NCR phone and laptop, and they all used the same timekeeping system on those devices. *Id.* at 92:10-15, 93:23-94:2. CEs also received their assignments on those devices, either electronically or via telephone, from the dispatch center. *Id.* at 94:14-21. The vast majority of CEs were provided a COV. *Id.* at 92:10-15.

Most notably, NCR's own attendance and timekeeping policies, both stated in the Handbook and relayed to Plaintiffs from their supervisors, required Plaintiffs to begin working at least 30 minutes **before the start** of their shift. Ex. A at NCR MEADOWS0000316 (emphasis added); Ex. B at NCR MEADOWS0000373; Meadows Dep. at 79:19-80:22 (each of Michael's territory managers as well as the CE Handbook states that he is supposed to dispatch half an hour

---

[3] Plaintiffs' Declarations are attached to this Motion as Group Exhibit E.

before the start of his shift and will start getting paid at the start of his shift), 83:13-84:8, 88:6-15; Taylor Decl. ¶¶ 10-11; Varner Decl. ¶¶ 10-11; Nyaberi Decl. ¶¶ 10-11; *see generally* Group Ex. E. In its Handbook under the section titled "Start/End Shift Guidelines," NCR states:

> As a general rule, at least thirty (30) minutes before the start of your shift: (1) you should check in with the Operations Center either via phone or handheld mobile devices for call assignments; and (2) you should activate an incident or update your whereabouts.

Ex. A at NCR MEADOWS0000316, Ex. B at NCR MEADOWS0000373. NCR's corporate representative Mariana Hall confirmed that the handbook applies to all CEs, and they are required to follow its policies. Hall Dep. at 21:15-21. Ms. Hall also confirmed that these duties, should they take more than two minutes, were compensable work duties. *Id.* at 62:3-63:11. Plaintiffs uniformly testified that their pre-shift requirements take more than two minutes. Taylor Decl. ¶¶ 16-17; Varner Decl. ¶¶ 16-17; Nyaberi Decl. ¶¶ 16-17; *see generally* Group Ex. E.

NCR, however, has not and does not pay Plaintiffs or other CEs for this required pre-shift work time. Plaintiffs uniformly testified that the NCR Handbook and their TMs directed them not to record time spent working prior to arriving at their first job site of the day. Meadows Dep. 79:13-80:15; Taylor Decl. ¶ 10; Varner Decl. ¶ 10; Nyaberi Decl. ¶ 10; *see generally* Group Ex. E. In conformity with this policy, Plaintiffs' TMs frequently sent Plaintiffs emails requiring them to begin work 30 minutes before their scheduled start time. *See, e.g.*, Group Ex. G. These emails instructed CEs to update their estimated times of arrival ("ETAs") at work sites and to update their status in the Workday application as "dispatch" or "DS" 30 minutes before the start of their shift. *See* Group Ex. G at MEADOWS_000009 ("You need to be [dispatch] 30 minutes before start of shift. If you need to pick up a part on your way to your first call, go [dispatch] and remark the call"); *Id.* at MEADOWS_000016 ("Subject: I am assisting B and D today Please update eta's and DS 30 minutes prior to shift start"). The emails also required CEs to be "WP" or

"work in progress" at the time their shift starts. *Id*. at MEADOWS_000013 ("Everyone needs to be WP by the start of shift").

NCR, however, did not accurately record all of the time CEs spend on pre-shift and/or post-shift activities. Taylor Decl. ¶¶ 14, 17; Varner Decl. ¶¶ 14, 17; Nyaberi Decl. ¶¶ 14, 17; *see generally* Group Ex. E. NCR failed to provide additional compensation for time spent fielding calls, emails, or text messages, mapping their routes, entering estimated times of arrival ("ETAs") on NCR's routing application, pre-calling customers, loading their vehicles, updating their status to "dispatch" or "traveling" on NCR's routing application, performing key audits, ordering and processing parts, entering time on their timesheets, and driving to and from their first and last jobs of the day. *See* Taylor Decl. ¶¶ 10-15; Varner Decl. ¶¶ 10-15; Nyaberi Decl. ¶¶ 10-15; *see generally* Group Ex. E. NCR, moreover, failed to make or maintain accurate records of all the time worked by CEs. *See* Compl. ¶¶ 12, 42; Taylor Decl. ¶¶ 14, 17; Varner Decl. ¶¶ 14, 17; Nyaberi Decl. ¶¶ 14, 17; *see generally* Group Ex. E.

NCR failed to compensate CEs for all of their overtime hours worked at a rate of time and one half for all hours worked over 40 hours per week. *See* Compl. ¶¶ 13-14, 21-22; Taylor Decl. ¶¶ 14, 17; Varner Decl. ¶¶ 14, 17; Nyaberi Decl. ¶¶ 14, 17; *see generally* Group Ex. E. Plaintiffs and other CEs are similarly situated in that they have the same job requirements and pay provisions and are subject to NCR's common practice of failing to pay time and one half for hours worked in excess of 40 hours per week in violation of the FLSA. *See, e.g.,* Group Ex. E.

## IV.    ARGUMENT

This Court should direct that notice be sent to all persons who have been employed by Defendant as CEs within the past three years who have not yet joined this action.[4] All such persons are similarly situated with respect to the FLSA claims in this action as they were subjected to a common policy to deprive them of overtime pay when they worked more than 40 hours per week.

### A. Allowing Plaintiffs to Pursue Their Claims Collectively by Facilitating Notice to Potential Class Members Furthers the Remedial Purpose of the FLSA

Under the FLSA, an employee may pursue a collective action on behalf of herself and "other employees similarly situated." 29 U.S.C. § 216(b); *e.g.*, *Girolamo v. Cmty. Physical Therapy & Assocs.*, No. 15 C 2361, 2016 WL 3693426, at *2 (N.D. Ill. July 12, 2016); *Terry v. TMX Furniture*, No. 13 C 6156, 2014 WL 2066713, at *2 (N.D. Ill. May 19, 2014). To pursue claims as part of a collective action, employees must give consent to join the action filed on their behalf. 29 U.S.C. § 216(b); *Allen v. Marshall Field & Co.*, 93 F.R.D. 438, 441 (N.D. Ill. 1982). Therefore, "[a] collective action under § 216(b) differs from a class action under Federal Rule of Civil Procedure 23 in that Rule 23 binds class members unless they opt out, whereas collective action members are bound under § 216(b) only if they opt in to the action by providing their written consent." *Girolamo*, 2016 WL 3693426 at *2 (citing *Ervin v. OS Restaurant Services, Inc.*, 632 F.3d 971, 976 (7th Cir. 2011)). Until an employee opts-in, the statute of limitations on their claims continues to run. *See Harkins v. Riverboat Services, Inc.*, No. 99 C 123, 2002 WL 32406581, at *2 (N.D. Ill. May 17, 2002). Additionally, as discussed in detail below in Part C, courts apply a "less stringent" standard for conditional certification pursuant to 29 U.S.C. § 216(b) than the much higher threshold plaintiffs are held to in demonstrating commonality and

---

[4] The statute of limitations under the FLSA is three years where, as here, the violation is willful and is otherwise two years. 29 U.S.C. § 255(a); *see, e.g.*, *Nehmelman v. Penn Nat. Gaming, Inc.*, 822 F. Supp. 2d 745, 764 (N.D. Ill. 2011) (authorizing notice to a conditional FLSA class of employees who worked within three years prior to the date of class notice).

predominance in certification of a class action under Rule 23. *E.g.*, *Vaughan v. Mortgage Source*, No. CV 08-4737(LDW)(AKT), 2010 WL 1528521, at *4 (E.D.N.Y. Apr. 14, 2010) (citation omitted); *Jirak v. Abbott Labs., Inc.*, 566 F. Supp. 2d 845, 847 (N.D. Ill. 2008).

The collective action mechanism furthers the remedial purposes of the FLSA and supports judicial economy. The Supreme Court has emphasized that by "expressly authoriz[ing] employees to bring collective ... actions ... Congress has stated its policy that [Section 216(b)] plaintiffs should have the opportunity to proceed collectively." *Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989).[5] Collective actions further the remedial purpose of the FLSA by allowing individual employees to pool their resources to enforce their rights. *Id.* At the same time, collective actions serve the interest of the courts and of all parties by providing an efficient means to resolve all common issues resulting from an unlawful policy or practice in a single proceeding. *Id.*

However, these benefits cannot be realized if the employees who suffered from the unlawful activity do not receive timely notice of the collective action and of their opportunity to opt-in. *Id.* Accordingly, courts have the power to facilitate the issuance of notice of an action to potential class members. *Id.* at 170-71; *Woods v. New York Life Ins. Corp.*, 686 F.2d 578, 580 (7th Cir. 1982) (district courts have the power to authorize notice of the action to similarly situated employees); *also Girolamo*, 2016 WL 3693426 at *2 (district courts have discretion in managing collective actions because the FLSA does not detail specific procedures for certifying a conditional class or authorizing collective action notices). The statute of limitations for an FLSA claim is two years after the cause of action has accrued, unless a willful violation is alleged, in which case the plaintiff has three years to bring a lawsuit. 29 U.S.C. § 255(a). Speed

---

[5] The plaintiff in *Hoffman-La Roche* brought an age discrimination case under the Age Discrimination in Employment Act that incorporates the enforcement and certification provisions of the FLSA. *Hoffman-La Roche*, 493 U.S. at 167.

is of the essence in issuing notice because the statute of limitations continues to run under the FLSA until aggrieved employees affirmatively opt-in to the action. *See* 29 U.S.C. § 216(b); *Harkins*, 2002 WL 32406581 at *2; *Larsen v. Clearchoice Mobility*, No. 11 C 1701, 2011 WL 3047484, at *2 (N.D. Ill. July 25, 2011). In the absence of timely notice, aggrieved employees could be deprived of the opportunity to participate until after their claims are diminished or extinguished by the passage of time. Because "delaying the notification procedure ... could have the undesirable effect of preventing potential opt-in plaintiffs from presenting their FLSA claims" *Larsen*, 2011 WL 3047484 at *2, the FLSA's broad remedial intent favors early notice to potential plaintiffs.

In this case, Plaintiffs allege that NCR willfully engaged in a practice of requiring CEs to perform off-the-clock work each day, failing to make and maintain accurate time records, and failing to pay them at a rate of time and one half for all hours worked over 40 per week in violation of the FLSA. If the CEs are able to prove these allegations, the FLSA allows them to recover back wages. However, the statute of limitations is running on the claims of absent members of the collective action. Therefore, the timing of the notice given to putative class members is of great significance.

**B.     The First Step in Certification Requires Only a Showing that Potential Opt-in Plaintiffs May Be "Similarly Situated"**

In certifying collective actions, "the majority of courts—including this Court—have adopted a two-step process for determining whether an FLSA lawsuit should proceed as a collective action." *Girolamo*, 2016 WL 3693426 at *2 (internal quotation omitted); *see also Terry*, 2014 WL 2066713 at *2; *Brown v. Club Assist Road Service U.S., Inc.*, No. 12 CV 5710, 2013 WL 5304100, at *12 (N.D. Ill. Sept. 19, 2013). During the first stage (the notice stage), the court determines whether there are allegations sufficient for the court to find that the

9

representative plaintiff and putative class members are "similarly situated." *Girolamo*, 2016 WL 3693526 at *2. At this initial stage of the litigation, Plaintiffs need only make "a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law." *Flores v. Lifeway Foods, Inc.*, 289 F. Supp. 2d 1042, 1045 (N.D. Ill. 2003) (citation omitted). "Courts interpret the 'similarly situated' requirement 'leniently.'" *Sylvester v. Wintrust Financial Corp.*, No. 12 C 01899, 2013 WL 5433593, at *3 (N.D. Ill. Sept. 30, 2013) (citations omitted); *Howard v. Securitas Sec. Servs. USA, Inc.*, No. 08 C 2746, 2009 WL 140126, at *5 (N.D. Ill. Jan. 20, 2009) ("[T]he court looks for no more than a 'minimal showing' of similarity.").

In an off-the-clock overtime case, plaintiffs meet their low burden of proof by making some showing that there are other employees who are similarly situated with respect to their job requirements and with regard to their pay provisions. *Mielke v. Laidlaw Transit, Inc.*, 313 F. Supp. 2d 759, 762 (N.D. Ill. 2004) (at the initial stage of conditional certification, courts determine whether similarly situated employees who may become plaintiffs exist). During the first stage certification analysis, "[t]he Court's determination as to whether a collective action may be appropriate ... does not involve adjudication of the merits of the claims." *Girolamo*, 2016 WL 3693426 at *2. At the second stage, later in the litigation and on a fuller record, the employer can move to decertify the class and the district court will determine whether the collective action may go forward by determining whether the plaintiffs who have opted in are in fact sufficiently "similarly situated" to the named plaintiff. *Id.*

## C. The Evidentiary Burden for Conditional Certification and Notice Is Modest

The "modest factual showing" required for conditional certification "is not a stringent standard; a plaintiff need only demonstrate a factual nexus that binds potential members of a

collective action together." *Girolamo*, 2016 WL 3693426 at *3 (internal quotation omitted). At this initial stage, the court does not decide substantive issues or require conclusive support of plaintiffs' claims. *Molina v. First Line Solutions LLC*, 566 F. Supp. 2d 770, 786 (N.D. Ill. 2007). Plaintiffs can meet this burden by providing "some evidence in the form of affidavits, declarations, deposition testimony, or other documents of a common policy to which they and other similarly situated employees were subjected." *Boltinghouse v. Abbott Labs., Inc.*, No. 15 CV 6223, 2016 WL 3940096, at *2 (N.D. Ill. July 20, 2016) (internal quotation omitted).

In meeting this modest burden, discovery is therefore not required. In fact, courts have explicitly rejected arguments that discovery should take place before the issuance of notice because the broad remedial purpose of the FLSA is best served by issuing notice before discovery. *Larsen*, 2011 WL 3047484 at *2. Courts in this Circuit need only reach the question of whether opt-in plaintiffs in a conditionally certified class are actually similarly situated at the second stage of the two-step inquiry, which occurs after discovery is complete. *Cf. Strait v. Belcan Eng'g Grp., Inc.*, 911 F. Supp. 2d 709, 718 (N.D. Ill. 2012) (applying the stricter "second stage standards" when the parties had completed fact discovery on the issues relevant to class certification). After discovery, a court may again consider the similarly situated requirement and make a factual determination as to whether plaintiffs have satisfied it, based upon information gained in discovery and knowledge of the exact makeup of the class. *See Cramer v. Bank of America, N.A*, No. 12 C 8681, 2013 WL 6507866, at *2 (N.D. Ill. Dec. 12, 2013). Further, "it is well settled that the existence of certain individual claims or defenses does not preclude the conditional certification." *Sexton v. Franklin First Fin., Ltd.*, No. 08-CV-04950(JFB)(ARL), 2009 WL 1706535, at *8 (E.D.N.Y. June 16, 2009).

As explained above, early notice furthers the broad remedial goals of the FLSA because the statute of limitations is running. If a more substantial evidentiary showing were required, discovery would have to be completed before notice could be issued, and the substantial delay would cause class member claims to become untimely. *See Larsen*, 2011 WL 3047484 at *2. A stricter standard would also be an unnecessary hindrance at this stage because the determination that plaintiffs are similarly situated is preliminary, not final. *Jirak*, 566 F. Supp. 2d at 848. Therefore, Defendants are in no way prejudiced by the initial determination because they can ask the court to reevaluate certification after the completion of discovery. *Id.* at 847.

### D. Plaintiffs Have Satisfied Their Burden to Support Notice to the Class

In determining whether Plaintiffs have made a sufficient showing that they are similarly situated to warrant issuance of notice, the relevant issue is not whether Plaintiffs and potential opt-in plaintiffs are identical in all respects, but rather whether they were subjected to a common policy to deprive them of overtime pay when they worked more than 40 hours per week. *Molina*, 566 F. Supp. 2d at 786. Here, NCR's own Handbook demonstrates that Plaintiffs and putative opt-in plaintiffs were the victims of a common policy requiring them to perform off-the-clock work that they allege violates the FLSA. Ex. A at NCR MEADOWS0000316; Ex. B at NCR MEADOWS0000373. During the statutory period, more than 3,000 CEs employed by NCR have been required to perform work before and after their regularly scheduled shifts. *See* Compl. ¶ 25, Answer ¶ 25; Hall Dep. at 92:6-8. In addition to the Named Plaintiff's deposition testimony, 30 additional Opt-in Plaintiff Declarants from 14 different states submit declarations in which they attest to being required to perform off-the-clock work without compensation. Meadows Dep. at 79:19-80:22; Meadows Decl. ¶¶ 10-15; Taylor Decl. ¶¶ 10-15; Varner Decl. ¶¶ 10-15; Nyaberi Decl. ¶¶ 10-15; *see generally* Group Ex. E. They also attest to not receiving pay for all of their

hours worked over 40 per week at a rate of time and one half, as required under the FLSA. *See* Meadows Decl. ¶ 17; Taylor Decl. ¶ 17; Varner Decl. ¶ 17; Nyaberi Decl. ¶¶ 17; *see generally* Group Ex. E. Plaintiffs are thus similarly situated in that they all were required, per NCR's own policy, to perform uncompensated off-the-clock work and deprived of the overtime compensation to which they were entitled under the FLSA. These circumstances were not experienced by the Named Plaintiff, Declarants, and the current opt-in Plaintiffs alone. Numerous other NCR CEs were subject to the same company policies and practices and thus are similarly situated to the Named Plaintiff. *See* Hall Dep. at 92:6-8.

Courts have repeatedly issued FLSA notice in cases where employees seeking compensation for unpaid wages have presented evidence similar to that submitted in this case. In *Lukas v. Advocate Health Care Network and Subsidiaries*, the court held that FLSA notice to 234 home health care clinicians was proper based in part on declarations of a mere **three** employees. 2014 WL 4783028, at *3 (N.D. Ill. Sept. 24, 2014). Similarly, in *Boltinghouse*, the court held that similarly formatted declaration statements that offer specific facts of each plaintiff, such as dates of employment, job titles, and average number of overtime hours without compensation are sufficient as evidence to support a motion for conditional class certification. 2016 WL 3940096 at *2. Likewise, the court in *Molina*, stated, "Plaintiffs need not provide conclusive support, but they must provide an affidavit, declaration, or other support beyond allegations in order to make a minimal showing of other similarly situated employees subjected to a common policy." 566 F. Supp. 2d at 786. It is enough for plaintiffs to allege in pleadings and declarations that they experienced similar pay policies as members of the potential collective

13

action, even if plaintiffs' jobs differ from those of other employees. *See, e.g.*, *Molina*, 566 F. Supp. 2d at 786.[6]

Here, Plaintiffs have easily satisfied their burden. Plaintiff's Complaint sets forth allegations that he and similarly situated employees, 299 of whom have already joined this action and 30 of whom have submitted declarations, were subject to common compensation practices and were the victims of a common scheme perpetuated by NCR to deprive CEs of adequate overtime compensation for all hours worked in excess of 40 each week.[7] As NCR's own documents, Plaintiffs' declarations, and other evidence reveals, all CEs performed similar job duties, were compensated at an hourly rate, and were unlawfully required to perform off-the-clock work without adequate overtime compensation in violation of the FLSA. Given NCR's written policies and the statements by Plaintiffs, emails from Plaintiffs' supervisors – reminding

---

[6] *See also Madden v. Corinthian Colleges, Inc.*, No. 08 C 6623, 2009 WL 4757269 (N.D. Ill. Dec. 8, 2009) (district court held that plaintiffs satisfied their modest burden with affidavits from two named plaintiffs); *Brand v. Comcast Corp.*, No. 12 CV 1122, 2012 WL 4482124 (N.D. Ill. Sept. 26, 2012) (court held that affidavits of five opt-in plaintiffs and the named plaintiff were sufficient to provide modest factual showing that they and other similarly situated plaintiffs were subject to a common, unwritten policy); *Blakes v. Illinois Bell Telephone Co.*, No. 11 CV 336, 2011 WL 2446598 (N.D. Ill. June 15 2011) (granting motion for conditional certification where declarations of the seven named plaintiffs alleged that the defendant subjected them and other potential plaintiffs to an unofficial, common practice that violated the FLSA); *Nehmelman*, 822 F. Supp. 2d at 748-49 (granting motion for conditional certification where declarations of the named plaintiff and four additional former employees showed that defendant subjected them to a common policy that violated the FLSA); *Jirak*, 556 F. Supp. 2d at 849 (deposition testimony and declarations were sufficient evidence at stage one that the potential plaintiffs were subject to a common policy that violated the FLSA); Ex. C at 12 (declarations from CEs in 17 states sufficiently diverse to warrant nationwide conditional certification).

[7] Plaintiffs anticipate that Defendant will point to catch-all language in the CE Handbook purporting to prohibit off-the-clock work in an effort to defeat this motion. Ex. B at NCR MEADOWS0000380. "It is well-settled, however, that the promulgation of written policies, *per se*, is insufficient to immunize an employer from conduct that otherwise contravenes the FLSA." *Butler v. DirectSAT USA, LLC*, 876 F. Supp. 2d 560, 569 (D. Md. 2012), *citing Essame v. SSC Laurel Operating Co. LLC*, 847 F. Supp. 2d 821, 828 (D. Md. 2012); *see also* 29 C.F.R. § 785.13 ("The mere promulgation of a rule against [off-the-clock] work is not enough. Management has the power to enforce the rule and must make every effort to do so"); *Espenscheid v. DirectSat USA, LLC*, No. 09-cv625-bbc, 2010 WL 2330309, at *7 (W.D. Wisc. June 7, 2010) (finding that defendants' formal wage and hour policies, which complied with the FLSA, did not preclude conditional certification where there was evidence of an informal policy to deny overtime).

Plaintiffs to be working 30 minutes before their shift starts – are indicative of NCR's enforcement of the off-the-clock work requirement. The emails from territory managers verify Named Plaintiff's and the declarants' claims: that they must be "dispatched" to their shift prior to its start time and, therefore, prior to receiving payment. Group Ex. E; Meadows Dep. at 79:13-80:15; Taylor Decl. ¶ 11; Varner Decl. ¶ 11; Nyaberi Decl. ¶ 11; *see generally* Group Ex. E. In light of the allegations in the Complaint, which are supported by NCR's own documents, deposition testimony of Mariana Hall, deposition testimony of the Named Plaintiff, and declarations of 30 other similarly situated CEs, Plaintiffs have presented a clear record that these CEs are subject to the same policy of being required to perform off-the-clock work and are therefore being denied compensation for work performed in excess of 40 hours a week. As a result, Plaintiffs have readily satisfied their lenient burden to warrant issuing notice to the Class.

### E. NCR Should Be Directed to Produce a List of Potential Class Members to Facilitate Notice

As discussed above, all persons employed as CEs by NCR within the three-year limitations period are "similarly situated" employees for purposes of the FLSA. Thus, the identification of all putative collective class members is necessary in order to provide them with adequate notice of this action, as contemplated by law. Accordingly, Plaintiffs request that the Court, in addition to entering an order granting conditional certification and approving the proposed Notice, attached hereto as Exhibit H, order NCR to produce to Plaintiffs the following within ten days of the Court's Order:

> A list, in electronic and importable format, of all persons who worked as home dispatch CEs for Defendant at any time since three (3) years prior to the date of the Court's Order, and who were required to perform off-the-clock work and were not paid overtime compensation for time worked in excess of forty (40) hours in given workweeks, including their first and last names, last-known addresses, email addresses, telephone numbers, dates of employment, social security numbers, and dates of birth.

### F.    Plaintiffs' Proposed Notice Is Fair and Adequate

Collective "opt-in" actions depend on "employees receiving accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate." *Hoffman-LaRoche*, 493 U.S. at 170. Supervised notice also prevents "misleading communication." *Id.* at 172.

Plaintiffs' proposal for notice to potential opt-in Plaintiffs meets the requirements of "timeliness, accuracy and information." *Id*. The proposed notice informs similarly situated CEs of this action and gives them the opportunity to join. It also accurately describes Plaintiffs' legal claims, their rights, and their options. Finally, the notice provides clear instructions on how to "opt-in" to the lawsuit and sets forth the prohibition against discrimination or retaliation for participation in this FLSA action. *See* Ex. H.

Plaintiffs propose that the Proposed Notice and Opt-in Consent Form be sent via first class U.S. mail and email to all current and former CEs employed by Defendant within the past three (3) years. *Cf.*, *Girolamo*, 2016 WL 3693426 at *6 (ordering the production of class member names, mailing addresses, telephone numbers, and email addresses).

Plaintiffs request that potential opt-in Plaintiffs interested in participating in this lawsuit be provided with sixty (60) days from the date of mailing to "opt-in" to this case. Plaintiffs' request is consistent with established FLSA practice in this judicial district. *See, e.g.*, *Anyere v. Wells Fargo*, No. 09 C 2769, 2010 WL 1542180, at *4 (N.D. Ill. Apr. 12, 2010) (ordering a 120 day opt-in period). Furthermore, Plaintiffs request approval for the option to send a reminder notice 15 days before the end of the opt-in period to any and all potential opt-in plaintiffs who have not yet replied. *See, e.g.*, *Boltinghouse*, 2016 WL 3940096 at *5 (authorizing use of a

reminder notice). Plaintiffs' proposed notice is fair and accurate and should be approved for immediate distribution.

## V.    CONCLUSION

Conditional certification and court-approved notice is routinely granted in cases like this, where individuals allege similar treatment and experiences in their employment. Plaintiffs have shown they are "similarly situated" and notice to the putative class is warranted here. Plaintiffs, therefore, respectfully request that the Court grant this Motion as follows:

(1)    Order conditional certification of this action as a representative collective action pursuant to the FLSA, 29 U.S.C. § 216(b), on behalf of all CEs who were required to perform off-the-clock work, were not paid overtime compensation for time worked in excess of forty (40) hours in given workweeks, and who worked for Defendants dating back three (3) years from the date of notice until the present (the "FLSA Class");

(2)    Order court-facilitated notice of this collective action to the FLSA Class in the form of Exhibit H;

(3)    Order Defendants to produce a computer-readable data file containing the names, addresses, email addresses, telephone numbers, dates of employment, social security numbers, and dates of birth of the FLSA Class; and

(4)    Authorize Plaintiffs to send a notice, at their expense, by U.S. First Class mail and email to all members of the FLSA Class to inform them of their right to opt-in to this lawsuit and a reminder notice 15 days before the end of the opt-in period.

Date: March 8, 2017                          Respectfully Submitted,

/s/ Ryan F. Stephan_____
Ryan F. Stephan
Haley R. Jenkins
STEPHAN ZOURAS, LLP
205 North Michigan Avenue
Suite 2560
Chicago, IL 60601
(312) 233-1550
(312) 233-1560 f
rstephan@stephanzouras.com
hjenkins@stephanzouras.com

ATTORNEYS FOR PLAINTIFFS

17

<u>**CERTIFICATE OF SERVICE**</u>

I, the attorney, hereby certify that on March 8th, 2017, I electronically filed the attached with the Clerk of the Court using the ECF system which will send such filing to all attorneys of record.

<u>*s/ Ryan F. Stephan*</u>