Exhibit C

AMERICAN ARBITRATION ASSOCIATION
EMPLOYMENT AND CLASS ACTION ARBITRATION TRIBUNAL

Case No.51 160 908 12
Ralph H. Colflesh, Jr., Esq.
Arbitrator

**MARK PRICE, Individually and on
Behalf of All Others Similarly Situated,**

        **Claimant,**

**and**

**NCR CORPORATION,**

        **Respondent.**

## ORDER OF ARBITRATOR CONDITIONALLY CERTIFYING CLASS AND FACILITATING NOTICE OF CLASS ACTION

  I, THE UNDERSIGNED ARBITRATOR, having been designated in accordance with the arbitration agreement entered into between the above-named parties and dated December 14, 2007, and having been duly sworn, and having duly considered the proofs and allegations of the parties regarding the issue of Conditional Class Certification and Facilitation of Notice of Class Action, do hereby ORDER, as follows:

1. Conditional certification of a class consisting of all CE's, as defined in the attached Opinion, who worked for Respondent from October 24, 2010 to the present is Granted.
2. Facilitation by the undersigned of a Notice to CE's affected by this Order is Granted.
3. Respondent shall produce a computer-readable data file containing the names, last-known addresses and last known email address—but not telephone numbers—of all CE's, as defined above, who worked for Respondent from October 24, 2010 to the present.

1

4. The contents of the Notice to be sent to all CE's affected by this Order shall be substantially the same as the Notice proposed by Claimants; provided however, that the opt-in period shall be limited to 45 days; and, further provided that changes in wording proposed by Respondent shall be negotiated by the parties and unresolved differences over the wording may be referred to the Arbitrator for resolution. The parties shall have 30 days from the date of this Order to resolve those differences.
5. Claimants are authorized to send the Notice, once the said Notice is agreed upon by the parties or ruled upon by the Arbitrator, by U. S. First Class mail and email to all members of the proposed class informing them of their right to opt into this action.

5/22/14
Date

Ralph H. Colflesh, Jr., Esq., Arbitrator

## Opinion

### Procedural History:

On May 4, 2012, Claimant Mark Price, who had been employed by Respondent, filed a Complaint in the United States District Court for the Northern District of Illinois Eastern Division on behalf of himself and all others similarly situated, seeking unpaid wages, overtime compensation, liquidated damages, penalties, attorneys' fees and costs, and "other damages owed," under the federal Fair Labor Standards Act, 29 USC 201 *et seq.* ("the FLSA"); the Illinois Minimum Wage Law, 820 ILCS 105 *et seq.*; and, the Illinois Wage Payment and Collection Act, 820 ILCS 115 *et seq.*

Claimant also petitioned for class action status for similarly situated persons, defined in Paragraph 18 of his Complaint as:

2

All individuals who were employed, or are currently employed, by the [Respondent], its subsidiaries, or affiliated companies, as customer engineers, technicians or any other similarly titled position at any time during the relevant statute of limitations period.

Claimant averred that the class of persons was too numerous for joinder to be practical; that the questions of law presented in the Complaint were common to all such persons; that the claims or defenses of Claimant were typical of the claims or defenses of such persons; and, that Claimant would fairly and adequately protect the interests of such persons. (Complaint, Paragraph 26).

Substantively, Claimant contended that class members and he were owed compensation for various alleged illegal practices of Respondent including (a) willful failure to pay overtime for all hours worked beyond 40 in a week; (b) willful failure to pay for hours of work required before the start and after the end of nominally scheduled shifts; (c) failure to record such time; and, (d) for the willful automatic deduction of an hour of pay for meal breaks each day regardless of whether meal breaks were taken or were worked. (Complaint, Paragraphs 12-16).

On June 13, 2012 Respondent moved to stay proceedings in the District Court and to compel arbitration, pursuant to the terms of a Mutual Agreement to Arbitrate All Employment Related Claims ("the Agreement") that Claimant had signed as a condition of being hired by Respondent.[1] A month later Claimant filed a response stating he did not oppose Respondent's motion and would pursue his claims in arbitration.

Respondent then asked the District Court to exclude Claimant's class action claims from arbitration. In a sur-reply Claimant asked the District Court to permit an arbitrator to decide whether Claimant could bring class claims to arbitration or direct that both Claimant's individual clams and class claims could be arbitrated.

---

[1] The penultimate paragraph of the Agreement reads: "Our mutual willingness to submit all disputes to arbitration is consideration for this Agreement. As additional consideration, I understand NCR requires this Agreement to be signed before I can begin employment at NCR." (Emphasis supplied).

3

On December 10, 2012, the Court granted Respondent's motion to compel arbitration and stay court proceedings. The Court expressly deferred on the question of whether Claimant could arbitrate class claims or only his individual claims.

Following presentation of Claimant's demand for arbitration to the American Arbitration Association ("the AAA"), the undersigned arbitrator was duly appointed to this matter pursuant to the parties' arbitration agreement. The undersigned directed the parties to submit briefs and reply briefs on the issue of whether the said agreement excluded class actions. The parties complied; however, they subsequently requested that no decision be rendered on class status until further notice.

Subsequent to the U. S. Supreme Court's decision in *Oxford Health Plans LLC v. Sutter*, 133 S. Ct. 2064 (2013) the parties requested a decision on the class question and submitted supplemental briefs. After considering the parties' arguments, the undersigned decided in October 2013 that the arbitration agreement permitted class-action arbitration.

## Current Procedural Posture:

Claimant has now filed a Motion for Conditional Certification, pending discovery and eventual final certification, of a class consisting of all Customer Engineers, technicians or any other similarly titled positions (jointly referred to herein as "CE's") who worked for Respondent nation-wide from October 24, 2010 to the present. Claimant has further moved for an Order (1) compelling Respondent to produce a computer-readable data base containing the names, addresses, telephone numbers and email addresses of the putative class members; (2) approving a Notice of class action to the proposed class members; and, (3) authorizing Claimant to send the said Notice at his expense by regular First-Class mail and email to all members of the proposed class informing them of their right to opt-in to the present action.

Respondent has opposed Claimant's Motion on the ground Claimant has failed to show the proposed nation-wide class of CE's were "similarly situated," a condition required for class certification, because Claimant could not show that the CE's were victimized in common nation-wide by of a policy or plan that violated the FLSA. Respondent further opposed class action on

4

the grounds that it would require Respondent to engage in a multitude of defenses against claims of the class members and that litigation involving a nationwide class would be unmanageable.

Alternatively, Respondent argues that (1) any conditionally certified class should be limited to CE's working from October 24, 2010 to the present within the State of Illinois, which is where Claimant worked and first brought claims against Respondent; (2) any Notice of Class Action should include certain editorial modifications for fairness and sufficient factual information to assure an informed decision by all those receiving the Notice; (3) a neutral party should take responsibility for mailing any Notice; (4) contact information regarding members of a conditionally certified class should be limited to only names and addresses and not include telephone numbers or email addresses; and, (4) the opt-in period specified in the Notice should be limited to 45 days.

## Summary of Averments and Arguments of Claimant:

Claimant avers the proposed class consists of non-exempt, hourly employees within the meaning of the FLSA who work as CE's in Illinois and nation-wide at various job sites to which they travel from their homes. He further claims all CE's have the same job duties and share the same basic job description for the installation, maintenance, and repair of automated teller machines ("ATM's"), point-of-sale ("POS") registers, and other devices provided to customers by Respondent. (Claimants' Group Exhibit B). Claimant notes that policies regarding CE's are set forth in a common Customer Engineer Handbook ("the Handbook").[2] (Claimant's Exhibit D). Claimant also notes that CE's are typically scheduled to work at least 40 hours per week and are provided by Respondent with a work vehicle, a lap top, blackberry or tablet, and a cell phone and other equipment to perform their jobs. It is also undisputed that CE's are required by Respondent to use Respondent's software programs to receive assignments, review work

---

[2] The Handbook is dated September 2007. Amendments made to it later in 2013 are not material to this matter at this stage of the proceedings.

5

orders, document their work status, input estimated times of arrival at a work site, and for other functions. Respondent manages, dispatches and oversees the CE's.

Further, Claimant points out that Respondent imposes a common attendance policy on all CE's, as stated in the Handbook, and that CE's must log into Respondent's site to get routing applications, check assignments, review work orders, enter their status as "dispatched," load their vehicles, and arrive at the first job site before the beginning of their scheduled shifts. Claimant avers that these activities begin at CE homes and are done off the clock without pay and that CE's are instructed in the Handbook to complete these duties before starting their first job each day. Moreover, it is not contested that the Handbook tells CE's they should check for daily work assignments at least 30 minutes prior to the beginning of each daily shift.

Claimant additionally asserts that Respondent does not start tracking CE's for payroll purposes until after the CE's arrive at their first site each day and that Respondent records logout times for payroll purposes when the CE's report finishing their last assigned job for the day, and that any time consumed by driving home, unloading vehicles, securing parts and tools, and other post-shift activity is not recorded and therefore not regularly paid for by Respondent.

Finally, Claimant claims that Respondent automatically deducts one hour each day from the total time between log in and log out for CE's as a lunch break, even when that break is not taken in whole or in part.

Claimant argues that such "similarly situated" employees are authorized to collectively recover wages and penalties under Section 216 (b) of the FLSA, and that Respondent's actions violate the Act. *Hoffman-LaRoche, Inc. v. Sperling*, 493 U. S. 165, 169 (1989); *Vanskike v. Peters*, 974 A.2d. 806 (7th Cir. 1992); *Woods v. New York Life Ins. Corp.*, 686 F.2d 578, 580 (7th Cir. 1982). Claimants argue that under the holdings of federal courts, including those in the Northern District of Illinois—where this action originates--the process of determining whether proposed class members are "similarly situated" involves two steps. *Jirak v. Abott Labs., Inc.*, 566 F. Supp. 2d 845, 847 (N.D. Ill. 2008).

The first step is appropriate for conditionally certifying a class and requires a determination of "potential" collective claimants. Such a determination is made when a plaintiff

6

makes a "modest factual showing" of sufficient commonality of treatment and victimization by a common policy or plan that violates the law. *Russell v. Illinois Bell*, 289 F. Supp. 1042, 1045 (N. D. Ill. 2003). Such a "modest showing" does not require precisely identical treatment, Claimant says, only treatment that is similar. *Allen v. Marshall Field Co.*, 93 FRD. 438, 443 (N. D. Ill. 1982). Claimant opines that if enough similarity is established, conditional certification can be made and notice of class action sent to members of the class. *Jirak, supra; Bontempo v. Metro Networks*, No. 01 C 8969, 2002 U. S. Dist. LEXIS 11810 (N. D. Ill. 2002). Claimant maintains he has established sufficient similarity among CE's nation-wide to justify at least conditional class certification.

The second step or stage of the certification process occurs after the opt-in time period has expired and discovery has been conducted. *Jirak, supra*. At that junction, the tribunal can entertain arguments from the opposing party that, based on the evidence collected, the matter should not proceed on a class action or other form of collective basis, and the conditional certification can be withdrawn. *Heckler v. DK Funding*, 502 F. Supp. 2d 777, 779 (N. D. 2007). Claimant contends that such an analysis is premature at this juncture.

## Summary of Averments and Arguments of Respondent:

Respondent answers that the CE's Claimant proposes as a class are not "similarly situated." Respondent sees the test of similarity as turning on the procedural question of whether or not the proposed class would generate common answers that would assist with the resolution of the litigation. *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2550 (2011). Conceding that *Dukes* was decided in a case involving FRCP 23 rather than the FLSA, Respondent points out that *Dukes* was approvingly cited and used as precedent by the United States Supreme Court in *Chinese Daily News v. Wang*, 132 S. Ct. 74 (2011), a case that was brought under the FLSA. Moreover Respondent points out that the Seventh Circuit has agreed that case law under Rule 23 and the FLSA has "largely merged" as to standards for certification of classes. *Espenscheid v. DirectSat USA, LLC*, 705 F. 3d 770, 771-772 (7th Cir. 2013).

7

Although Respondent agrees with Claimant that a "modest factual showing" is all that is necessary to conditionally certify a class under a two-step certification process, *Flores v. Lifeway Foods, Inc.*, 289 A. Supp. 2d 1042, 1045 (N. D. Ill. 2003), Respondent maintains that such a showing must demonstrate that potential class members were victims of a common policy or plan that violated the law and that such a showing is more than a mere formality. *Boyd v. Alutiq Global Solutions, LLC*, 2011 U. S. Dist. LEXIS 88656 (N. D. Ill. 2011). In fact, Respondent argues, an identifiable factual nexus needs to be shown that bonds proposed class members together as victims of a violation of law. *Molina v. First Line Solutions, LLC*, 566 F. Supp. 2d 770, 787 (N. D. Ill. 2011). Rigor must be applied in determining this bond even at the first stage of the certification process. *Molina*, 566 F. Supp. 2d at 787, n. 18.

Applying these rules to the facts of this case as Respondent urges them to be, Respondent says class litigation is improper. Respondent decries the lack of declarations filed by CE's in support of Claimant's motion for conditional certification of CE's as a class in two regards:

First, Respondent points out that during the time frame relied upon by Claimant nearly 4,000 CE's worked for Respondent, and a mere 0.002% were Declarants when the instant Motion was originally filed. (Respondent's Yeager Declaration, at Para. 4). Respondent believes this is not an acceptable sample of the purported class.

Second, Respondent holds that the original Declarations from Claimant do not demonstrate nation-wide commonality that is asserted by Claimant because most are from CE's who worked only in Illinois. *See, Lay v. Gold's Gym Int'l, Inc.*, 2013 U. S. Dist. LEXIS 144264, *14 (W. D. Tex. 2013); *Curless v. Great American Real Food Fast, Inc.*, 280 FRD 429 434 (S. D. Ill. 2013); *Boyd, supra; Molina, supra*.

Third, Respondent says that Claimant's proffered Declarations do not show personal knowledge of CE work practices in all the territories for which certification is sought. Respondent says those territories are managed very differently and that some CE's work under collective bargaining arrangements. (Respondent's Yeager Declaration, Aponte Declaration,

8

Faulkner Declaration, Haddad Declaration, Hubbard Declaration, Kent Declaration, Masias Declaration, Plettinck Declaration, VanderWoude Declaration; Wheeler Declaration).

Respondent further opposes the proposed class because it claims a multitude of defenses specific to each proposed class member would be required and such multiplicity weights against class certification. *See, Dukes, supra; Molina*, 566 F. Supp. 2d at 786, n. 18; *Thiessen v. Gen. Elec. Capital Corp.*, 267 F. 3d 1095, 1103 (10th Cir. 2001).

Respondent also insists that there is no showing by Claimant of a common policy or plan that violates the FLSA, and therefore under Section 216(b) collective action is not authorized. Respondent claims there is no evidence in the Handbook or elsewhere of a facially unlawful policy, nor is there evidence of a *de facto* policy of requiring or suffering CE's to work off-the clock. To the contrary, Respondent says, the Handbook requires CE's to enter all time worked outside their normal schedule into the Respondent's reporting system, including administrative duties for which the appropriate compensation should be paid.

Similarly, Respondent notes that the Handbook requires notice to Respondent if a CE is interrupted during his or her reported meal (lunch) period. Respondent says its currently published FLSA Policy instructs workers to report their hours worked, including overtime hours, accurately. (Yeager Declaration, Para 6, Exs. 3-4). Respondent underscores that none of Claimant's Declarations allege CE's were instructed to work off the clock without compensation, other than for *de minimis tasks*[3], that no CE was denied requests for pay for valid overtime work, and that there is no evidence of work off the clock—let alone Respondent's knowledge of such work. In summary, Respondent says, Claimant has failed to make even the required "modest showing" that members of the purported class were victims of a common policy or plan that violated the FLSA. *Strait v. Belcan Engineering Group, Inc.*, 2011 U. S. Dist. LEXIS 156518, * 21 (N. D. Ill. 2011).

---

[3] It is recognized that *de minimis* work outside of compensated time frames does not rise to the level of an FLSA violation since such work is seen a non-compensable. *Anderson v. Mt. Clemens Pottery Co*, 328 U. S. 680, 692 (1946).

9

**Analysis:**

The current posture of this case is at step one of the class certification process. In that position, the question posed is whether Claimants have made a "modest factual showing" demonstrating that they and the class they seek to represent were victims of a common policy or plan that was in violation of the FLSA. *Flores v. Lifeway Foods, Inc.*, 289 F. Supp. 2d 1042, 1045 (N. D. Ill 2003). Such a showing must be enough to establish an identifiable factual nexus. *Molina, supra*. With all respect to the courts in *Molina* and *Vennet, et al v. American Intercontinental Univ. Online*, 2005 U. S. Dist. LEXIS 453444, *29, n. 14 (N. D. Ill 2005), there seems to be a very logical reason for distinguishing between the sufficiency of the modest factual showing necessary at the first stage of litigation over class certification and the second stage. As Claimant underscores in his brief, the first stage analysis is for the purpose of establishing *conditional* certification that may very well be modified or revoked entirely after discovery at that level of the proceedings has been completed.[4]

Here, Claimant has made a showing that all CE's throughout the United States were governed by the Handbook as to key requirements and followed various directives. It appears CE's were subject to logging into the Respondent's system for payroll purposes when they arrived at their first job site from their homes, but prior to arrival they were required to review and acknowledge their assignments for the day. There is also a showing that CE's had to provide Respondent with their estimated times of arrival, load their equipment into Respondent's vehicles and drive from their homes to the first work site. Further, there is evidence CE's were subjected to an automatic time deduction of one hour for lunch, notwithstanding whether they had to skip, interrupt, or abbreviate the one hour period because of work. Third, there are Declarations to the effect CE's were not paid at the rate of time and one-half for all hours they worked for the Respondent in excess of forty in any week, notwithstanding that some, according to Respondent's Yeager Declaration, may have been paid for some administrative time and commuting time.

---

[4] Indeed, nothing herein should be interpreted as suggesting permanent class status will be automatically conferred as to any CE following discovery or that the undersigned has reached any conclusions regarding the merits of the case.

10

Claimant has also made a showing that CE's nation-wide have the same job description and primary duties and are outfitted with the same equipment by Respondent, and are required to use Respondent's software applications for receiving assignments, reviewing work orders, documenting their work status, closing out assignments and other functions essential to Respondent's employment of them. Although Respondent has offered Declarations showing a certain amount of managerial discretion by the CE's' first line supervisors, known as Territorial Managers, and claiming that all CE's were not actually treated the same and that CE's working in different region of the country had different requirements, the evidence is sufficient at this point to convince me the entire proposed class is likely to have shared a common treatment in many, if not all, aspects of their employment.[5]

In sum, I am convinced that Claimant has made a modest factual showing, sufficient at this stage of the arbitration, that CE's nation-wide were similarly situated, *Mielke v. Laidlaw Transit, Inc.*, 313 F. Supp. 2d 759, 762 (N.D. Ill. 2004); *Flores, supra*. Such similarity would not render Respondent's defense of this action (or Claimant's prosecution of it, for that matter) unmanageable, nor would it require particularized evidence as to each member of the class as Respondent believes. To the contrary, it appears in this case that "common questions [would] predominate," *Alvarez v. City of Chicago*, 605 F. 3d 445, 449 (7th Cir. 2010), as to when CE's worked off the clock, how much they worked off the clock, and whether Respondent knew or had reason to know of such work.

I am also convinced that Claimant has met what I see as a second prong of the "similarly situated" test. *Flores, supra*. Based on Claimant's Declarations as to the hours of work they performed and the duty requirements of the CE Handbook, all CE's were subject to Respondent's nation-wide pre- and post-paid work day practices. These practices, if actually followed and reinforced by Respondent's knowing endorsement, would likely be in violation of the FLSA and would be such despite the disclaimers in the Handbook cited by Respondent or

---

[5] This may not be true of CE's that Respondent asserts worked under collective bargaining arrangements, but since the relevant contracts are not before me at this time, I cannot determine to what extent their treatment varied from that of their unrepresented counter-parts. I note that as a matter of law a collective bargaining contract cannot supersede the requirements of the FLSA.

11

Respondent's current FLSA Policy pronouncements. *Cf. Gaines v. K-Five Constr. Corp.*, 2014 U. S. App. LEXIS 133, *36 (7th Cir. 2014).

Turning to Claimant's proposed Notice, his Declarations are from CE's in sufficiently diverse states that nation-wide class status and corresponding notice is appropriate. This is not a case where the moving party presents Declarations from only one location, *Boyd, supra*, or Declarations limited to one state, *Collazo v. Forefront Educ., Inc.*, 2010 U. S. Dist. LEXIS 7661, *7-8 (N. D. Ill. Jan. 28, 2010). Rather, Claimant's Declarations and opt-In forms are now from 17 states (counting the District of Columbia as a "state") and show a sufficient geographical span to justify notice everywhere in the United States that Respondent's Handbook, practices, and policies implicating the FLSA, were in place.

I also reject Respondent's argument that a neutral third party is needed to mail or otherwise send Notices and that contact information supplied by Respondent for the Notice should be limited to names and mailing addresses. Even though it involves nearly 4,000 CE's, this is a relatively small class spread over a wide area. Therefore Respondent's list of names and contact information is the only reasonably expeditious way for claimants to reach class members, since Notice would otherwise have to be attempted through scatter-shot traditional and social media in the divers regions where the relatively few potential class members might live. I observe that this is not a request pursuant to FOIA from a federal agency involving potentially vast numbers of creditor names, as in *The Larkin Law Firm v. Federal Trade Commission*. 352 F.3d 1122 (7th Cir. 2003). Further, Claimants' request for email addresses is no more invasive than a potential opt-in's residential postal address.

As for the length of the opt-in period, I find the forty-five days urged by Respondents to be sufficient, consistent with *Mielke v. Laidlaw Transit, Inc.*, 2003 U.S. Dist. LEXIS 636, *14 (N. D. Ill. 2003). I also will deny Claimant's request for telephone numbers since the furnishing of that data could lend itself to bothersome measures with respect to potential opt-ins. The parties will also be ordered to seek mutually satisfactory adjustments to other provisions of Claimant's proposed Notice, and failing mutual agreement on those provisions, to refer unresolved issues to me for final determination.

5/22/14
Date

[signature]

Ralph H. Colflesh, Jr., Esq., Arbitrator

13