UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MICHAEL MEADOWS, | |
| Plaintiff, | |
| v. | No. 16 CV 6221 |
| NCR CORPORATION, | Judge Manish S. Shah |
| Defendant. | |

ORDER

Plaintiff's renewed motion for conditional certification and to facilitate notice pursuant to 29 U.S.C. § 216(b), [136], is granted. The proposed notice, [179-3], as modified by this order, may issue. Defendant shall produce to plaintiff by 11/28/17 the first and last names, last-known addresses, email addresses, and dates of employment of members of the putative collective.

STATEMENT

Meadows previously moved for conditional certification and to facilitate notice pursuant to 29 U.S.C. § 216(b), *see* [59], and I denied that motion, *see* [118]. He now renews his requests. *See* [136].

*Lenient Standard of Review*

The Fair Labor Standards Act authorizes employees to bring claims on behalf of themselves and other "similarly situated" employees through a collective action. 29 U.S.C. § 216(b). District courts have broad discretion to manage FLSA collective actions. *Alvarez v. City of Chicago*, 605 F.3d 445, 449 (7th Cir. 2010). Many district courts use a two-step conditional certification process to establish whether potential plaintiffs in the FLSA collective action should be sent a notice of their eligibility to participate and be given the opportunity to opt into the collective action. *Gallardo v. Scott Byron & Co.*, No. 12-CV-7202, 2014 WL 126085, at *16–17 (N.D. Ill. Jan. 14, 2014) (citing *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989); *Ervin v. OS Rest. Servs., Inc.*, 632 F.3d 971, 974 (7th Cir. 2011).

At the first step, plaintiff must make a modest factual showing that other employees are similarly situated. *DeMarco v. Nw. Mem'l Healthcare*, No. 10 C 397, 2011 WL 3510905, at *1 (N.D. Ill. Aug. 10, 2011). The court applies a lenient

standard at this step—"[the] court requires nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan." *Jones v. Furniture Bargains, LLC*, No. 09 C 1070, 2009 WL 3260004, at *2 (N.D. Ill. Oct. 9, 2009) (quoting *Thiessen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1102 (10th Cir. 2001)). The plaintiff cannot make a modest factual showing by relying on allegations in the complaint; the plaintiff must offer some factual support through affidavits, declarations, deposition testimony, or other documents. *DeMarco*, 2011 WL 3510905 at *1. If the plaintiff overcomes the first step, the court conditionally certifies the collective action, and notice is sent to potential plaintiffs to inform them of the suit and to provide the opportunity to opt into the collective action. *DeMarco*, 2011 WL 3510905 at *1 (citing *Hoffman–La Roche*, 493 U.S. at 169–74).

At the second step, the court may reevaluate the conditional certification to assess whether the requisite similarity exists between the named plaintiff and the opt-in plaintiffs. *Salmans v. Byron Udell & Assocs.*, Inc., No. 12 C 3452, 2013 WL 707992, at *2 (N.D. Ill. Feb. 26, 2013). Typically, the second step takes place after the parties exchange discovery and after the opt-in period has closed, and it is usually prompted by a defendant's motion to decertify the collective action. *DeMarco*, 2011 WL 3510905 at *2. Given how developed the record is at the second step, the court conducts a rigorous and fact-intensive review, and it uses a more stringent standard than it used at the first step. *Id.* If the court does not find that sufficient similarities are present, the court may revoke the conditional certification or it may divide the class into subclasses. *Salmans*, 2013 WL 707992 at *2.

In some cases, where parties have already completed significant discovery, courts will use a "heightened" or an "intermediary" standard in considering a motion for conditional certification at the first step. *See Sylvester v. Wintrust Fin. Corp.*, No. 12 C 01899, 2013 WL 5433593, at *3 (N.D. Ill. Sept. 30, 2013) (collecting cases). NCR urges this court to require more than just a modest factual showing from plaintiffs because this case has been pending for more than one year, NCR has produced almost 250,000 documents, Meadows has taken four depositions of NCR management personnel, and NCR has taken Meadows's deposition, as well as three opt-in plaintiffs' depositions. According to NCR, this constitutes "substantial discovery" that warrants a heightened standard at the first step of the conditional certification process. Meadows counters that NCR's "data dump of documents" came on the heels of NCR's motion for summary judgment, and that those documents were only "fully produced" after plaintiff filed his renewed motion for conditional certification. [179] at 8. Additionally, Meadows says that NCR has refused to produce discovery for more than 295 of the opt-in plaintiffs or other members of the putative collective, and that NCR has only produced discovery concerning Meadows and less than two percent of the opt-in plaintiffs.

Neither a discovery deadline nor a close of the opt-in period has been set in this case. This means that the parties do not have all the evidence that will be available at the conclusion of discovery, and they do not know who else may attempt to join this action. Although the record may be more developed as compared to other cases at the first step of conditional certification, it is still too limited to justify applying the more stringent review. *DeMarco*, 2011 WL 3510905 at *2 (citing *Betancourt v. Maxim Healthcare Servs., Inc.*, No. 10 C 4763, 2011 WL 1548964, at *12–13 (N.D. Ill. Apr. 21, 2011)). It is too limited because discovery on the specific issue of whether the potential plaintiffs are similarly situated is in its infancy. *See Nicks v. Koch Meat Co.*, No. 16-CV-6446, 2017 WL 4122743, at *6 (N.D. Ill. Sept. 18, 2017) (citing *Girolamo v. Cmty. Physical Therapy & Assocs., Ltd.*, No. 15 C 2361, 2016 WL 3693426, at *3 (N.D. Ill. July 12, 2016); *Babych v. Psychiatric Sols., Inc.*, No. 09 C 8000, 2011 WL 5507374, at *3 (N.D. Ill. Nov. 9, 2011)). The modest factual showing is the appropriate standard here.

*Evidence of NCR's De Facto Policy That Violated the FLSA*

In support of his first motion for conditional certification, Meadows offered 195 consent forms from the opt-in plaintiffs, seven declarations from Customer Engineers, NCR's Customer Engineer Human Resources Handbook, emails from NCR leadership, a training manual for NCR's time recording system, and two depositions of NCR personnel. I denied the first motion because: the consent forms did not contain any substantive information about NCR requiring CEs to perform work without compensation; the declarations from CEs in five different states, who were managed by five different Territory Managers, demonstrated that work went uncompensated, but not that NCR had had a de facto policy to not pay CEs for work performed before and after their shifts or during their lunch period; the handbook expressly prohibited off-the-clock work, and Meadows's deposition testimony about instructions from his territory managers to work off-the-clock did not support an inference that other managers similarly instructed CEs to falsely record their time; the emails did not discuss compensation nor did they instruct CEs to perform uncompensated work; the training manual explained how to remove the default one-hour lunch break deduction from a time entry before submitting it; and the depositions of NCR personnel did not support a finding of a de facto policy to have other CEs perform off-the-clock work. *See* [118].

Meadows re-offers much of the same evidence as the earlier motion for conditional certification, namely NCR's Customer Engineer Human Resources Handbook, emails from NCR leadership, a training manual for NCR's time recording system, and deposition testimony from Michael Meadows and NCR's Employee Relations Consultant. But, he also offers new evidence—declarations from CEs from more than one dozen different states, who were managed by

3

nineteen different territory managers, and an order of arbitration conditionally certifying class and facilitating notice of class action in *Price v. NCR Corporation.*

According to most of the CEs' declarations: (1) NCR's policies and practices required CEs to complete a number of tasks before their shift each day (review assignments, read emails, order parts, pick up parts from FedEx, communicate with the "NCR Tower," map routes, pre-call customers, enter ETAs, load parts into the company-owned vehicle, and drive to the first worksite), but NCR's policies instructed CEs to enter their start time each day as the time they arrived at their first worksite, not as the time they first started working, *see, e.g.*, [136-5] at 6, ¶¶ 10–11; (2) NCR's policies and practices required CEs to complete a number of tasks after their shift each day (key audits, unload parts from the company-owned vehicle, order parts, communicate with other employees and their territory manager, review emails, answer correspondence, and enter time on the electronic timesheet), but NCR's policies also instructed CEs to enter their end time each day as the time they completed their last job in the field, not as the time they ceased working, *see, e.g.*, [136-5] at 6, ¶¶ 10, 15.

Such information from the CEs' declarations, along with similar deposition testimony from Meadows, is enough to establish, at this stage, that NCR had nationwide policies or practices that required its CEs to perform off-the-clock work, in violation of the FLSA. Despite working in different states and for different territory managers, the CEs performed the same core set of activities before their shift, and after their shift, but they underreported their hours in the same manner, because they were instructed to enter their time based on arrival at and departure from field assignments. The CEs' adoption of the same habits, even though such habits were in direct contravention of NCR's handbook, shows that a "factual nexus" existed between the way NCR's policies and practices affected Meadows and the way they affected each of the other CEs. *See Brown v. Club Assist Rd. Serv. U.S., Inc.*, No. 12 CV 5710, 2013 WL 5304100, at *12 (N.D. Ill. Sept. 19, 2013).

NCR emphasizes that its written policies prohibit off-the-clock work and inaccurate time reporting, but such evidence does not eliminate the possibility that NCR also had an unwritten policy or an unofficial practice of encouraging off-the-clock work by requiring the performance of significant tasks before and after shifts while requiring CEs to clock in and clock out based on their arrival and departure times. Relatedly, NCR's evidence that some CEs admitted that they were never told to underreport their hours does not undermine the CEs' statements. *See* [172] at 15–18. Under the lenient standard of review, "the court does not make merits determinations, weigh evidence, determine credibility, or specifically consider opposing evidence presented by a defendant." *Bergman v. Kindred Healthcare, Inc.*, 949 F.Supp.2d 852, 855–56 (N.D. Ill. 2013). Any conflicts or reasonable inferences must be resolved in the plaintiff's favor at the first step. *Salmans*, 2013 WL 707992

4

at *4. Accordingly, Meadows has marshalled enough evidence to make a modest factual showing.

It is possible that too many individual questions exist, because the tasks performed by CEs, when they performed them, and the reason why the work was uncompensated may be specific to a particular CE, territory manager, or geographic area. If Meadows ultimately fails to produce sufficient evidence of a national policy or practice at work, then decertification should follow because it is likely that individualized inquiries will predominate in the case. But at this stage, there is enough to let CEs know that this lawsuit exists.

Meadows's renewed motion for conditional certification and to facilitate notice is granted. I conditionally certify a collective action for home dispatch CEs employed by NCR at any time since 11/9/2014 and notice shall be given to this group.

*Form and Delivery of Notice*

Meadows requests that the court approve his proposal for notice and enter an order stating that NCR must produce a list of CEs, including their first and last names, last-known addresses, email addresses, and dates of employment.

Additionally, Meadows requests that members of the putative collective be given sixty days from the date of mailing to opt into this case, and that he be given the option to send a reminder notice fifteen days before the end of the opt-in period to any individuals who have not yet replied.

NCR submitted revisions to Meadows's proposal for notice. [172-18] at 2–5. Beyond those revisions, however, NCR only takes issue with Meadows's request for telephone numbers and email addresses of members of the putative collective. NCR argues that providing such information constitutes an unnecessary intrusion into the privacy of individuals who are not yet parties to this action. NCR also proposes using a third-party vendor to administer the notice, to protect the privacy of members and to prevent improper attorney solicitation.

Courts in this district have permitted telephone numbers and email addresses to be used in connection with FLSA notices, with appropriate safeguards. *See Girolamo*, 2016 WL 3693426 *6 (telephone numbers and email addresses permitted because a protective order limited the use of that information to its intended purpose); *Russell v. Illinois Bell Tel. Co.*, 575 F.Supp.2d 930, 939 (N.D. Ill. 2008) (same). Since Meadows acquiesced to NCR's request to have a third-party vendor administer the notice, [179-3] at 3, NCR's privacy concerns have been adequately addressed. Nevertheless, I see no need for the disclosure of both phone

5

numbers and emails. Based on the facts in the record, it is clear that members of the putative collective are relatively sophisticated email users, such that emailing them notice of this action would be sufficient. Using only email addresses, and not phone numbers, to disseminate the notice will still allow members of the putative collective to receive "accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate." *Hoffman-LaRoche*, 493 U.S. at 170.

I order NCR to produce a computer-readable data file containing the names, last-known addresses, email addresses, and dates of employment of the FLSA Class. I also order Meadows and the third-party vendor that administers the notice to only use the email addresses for this litigation.

With respect to the form notice, I accept Meadows's revised proposal, [179-3] at 2–5, subject to the following changes: First, in the "To:" section on page 2, add the opening quotation mark before "Customer." Second, in the "To:" section on page 2, omit "or any other similarly titled position for NCR Corporation" because the record only supports notifying similarly situated Customer Engineers. Third, in the "Description of the Lawsuit" section on page 2, omit "worked during lunches" and "for drive time and overtime pay," because the evidence submitted in this renewed motion does not support a "factual nexus" between the way NCR's policies and practices concerning the lunch break affected Meadows and the way they affected each of the other CEs. The showing for a collective action is sufficient only for pre- and post-shift work. Including references to drive time and overtime is unnecessary in this context of the notice. Fourth, in the "To:" section on page 3, in place of "regarding the merits of this case or" insert "on," because this court recently reached a decision touching on the merits in its summary judgment memorandum opinion. Fifth, in the "Your right to participate in this lawsuit" section on page 3, omit any reference to "Settlement" Administrator, because that could mislead potential opt-ins. Sixth, in the "Effect of joining this suit" section on page 3, after the fourth sentence, add the following language: "However, a portion of the defendant's court costs and expenses may be assessed against you if you do not prevail on your claim," because including the prospect of costs is consistent with the parties' proposal to include some reference to the potential risks of opting in, and it makes the disclosure more complete. *See Freeman v. Total Sec. Mgmt.-Wisconsin, LLC*, No. 12-CV-461-WMC, 2013 WL 4049542, at *11 (W.D. Wis. Aug. 9, 2013). Finally, in the "No retaliation permitted" and the "Further information" sections on page 4, omit the last sentence in each section because they unnecessarily provide advice, which is beyond the scope of providing the FLSA class notice of its rights.

ENTER:

Date: November 9, 2017

Manish S. Shah
U.S. District Judge